DAVID W. SCHECTER (State Bar No. 296251)
dschecter@millerbarondess.com
ROBBY S. NAOUFAL (State Bar No. 302148)
rnaoufal@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Defendant
KINDERFARMS LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GENEXA INC., <br><br> Plaintiff, <br><br> v. <br><br> KINDERFARMS LLC, <br><br> Defendant. | **CASE NO. 2:22-cv-09291** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT KINDERFARMS LLC'S MOTION TO DISMISS, MOTION TO STRIKE, AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP)** <br><br> [*Filed Concurrently with Notice of Motion and Motion to Dismiss Plaintiff's Complaint, Motion to Strike, and Special Motion to Strike (Anti-SLAPP); Declaration of David W. Schecter; Request for Judicial Notice; and [Proposed] Order*] <br><br> Hearing Date: February 13, 2023 <br> Hearing Time: 10:00 a.m. <br> Location: Courtroom 5A <br><br> Complaint Filed: December 22, 2022 <br> Trial Date: Not yet set <br><br> Assigned to: The Honorable Michael W. Fitzgerald and Magistrate Judge Steve Kim |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

592173.3

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................... 3

    A. Parties ........................................................................................................ 3

    B. Summary Of Genexa's Allegations ........................................................... 3

        1. Genexa Claims KinderFarms Copied Products and Packaging That Were Already in the Public Domain .................. 3

        2. Genexa's False Advertising Claims ............................................. 5

        3. Genexa's Interference Allegations .............................................. 6

    C. Procedural History ..................................................................................... 6

III. LEGAL STANDARDS ........................................................................................ 7

    A. Rule 12(b)(6) Motion to Dismiss ............................................................. 7

    B. Rule 12(f) Motion To Strike ..................................................................... 8

    C. Anti-SLAPP Special Motion To Strike ..................................................... 8

IV. ARGUMENT ........................................................................................................ 9

    A. Genexa Fails To State A Claim For Trade Dress Infringement ............... 9

        1. Genexa Fails to Define Its Trade Dress ..................................... 10

        2. Genexa's Alleged Trade Dress Is Functional ............................ 12

        3. There Is No Alleged Secondary Meaning .................................. 13

        4. There Is No Alleged Likelihood of Confusion ........................... 13

    B. Genexa Fails To State A Claim For False Advertising ......................... 17

        1. The "Originator" Claim Is Not Actionable ............................... 17

        2. Genexa's "Non-Toxic" Theory Fails ......................................... 19

    C. The State Law Claims Fail For The Same Reasons ............................... 22

    D. Genexa's "Originator" Claim And Supporting Allegations Should Be Stricken Per California's Anti-SLAPP Statute ................... 22

        1. Genexa's "Originator" Claim Arises from Protected Activity ...................................................................................... 23

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

        2.      Genexa's Claim Lacks Probable Merit ....................................... 24

V.      CONCLUSION ................................................................................. 24

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

ii

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Advertise.com, Inc. v. AOL, LLC*,
2010 WL 11519510 (C.D. Cal. Mar. 23, 2010) ............................................. 13

*Apple Inc. v. Amazon.com Inc.*,
915 F. Supp. 2d 1084 (N.D. Cal. 2013) ......................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 7, 14

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ................................................................. 19, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 7, 13

*Bell v. Publix Super Mkts., Inc.*,
982 F.3d 468 (7th Cir. 2020) ......................................................................... 20

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
963 F.3d 859 (9th Cir. 2020) ......................................................................... 12

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989) ........................................................................................ 5

*Cannarella v. Volvo Car USA LLC*,
2016 WL 9450451 (C.D. Cal. Dec. 12, 2016) ............................................... 17

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994) ......................................................................... 22

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
911 F.2d 242 (9th Cir. 1990) ......................................................................... 18

*Crafty Prods., Inc. v. Michaels Cos., Inc.*,
424 F. Supp. 3d 983 (S.D. Cal. 2019),
*aff'd* 839 F.. App'x 95 (9th Cir. 2020) ......................................................... 11

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
158 F.3d 1002 (9th Cir. 1998) ....................................................................... 12

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
142 F.3d 1127 (9th Cir. 1998) ............................................................. 10, 13, 14

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ......................................................................... 20

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010) ..................................................... 8, 19

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

*Fair Wind Sailing, Inc. v. Dempster*,
   764 F.3d 303 (3d Cir. 2014) ................................................................ 10, 11

*Gershman v. Bayer HealthCare LLC*,
   2015 WL 2170214 (N.D. Cal. May 8, 2015) ............................................ 16

*Higgins v. Keuffel*,
   140 U.S. 428 (1891) ..................................................................................... 4

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ...................................................................... 9

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
   738 F.3d 1085 (9th Cir. 2013) .................................................................. 10

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
   2014 WL 6892141 (C.D. Cal. Nov. 5, 2014) ........................................... 11

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .................................................................... 8

*Int'l Leisure Prods., Inc. v. FUNBOY LLC*,
   747 F. App'x 23 (2d Cir. 2018) ................................................................ 11

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
   287 F.3d 866 (9th Cir. 2002) .................................................................... 22

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
   988 F.2d 1117 (Fed. Cir. 1993) ................................................................ 16

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   113 F.3d 373 (2d Cir. 1997) ................................................................ 10, 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ..................................................................................... 9

*Luigino's, Inc. v. Stouffer Corp.*,
   170 F.3d 827 (8th Cir. 1999) .................................................................... 14

*Mattel, Inc. v. MGA Entm't, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................ 12, 13

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ...................................................................... 8

*Miller v. Easy Day Studios Pty Ltd.*,
   2021 WL 4209205 (S.D. Cal. Sept. 16, 2021) ......................................... 14

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ....................................................................... 20

*Newcal Indus., Inc. v. Ikon Office Sol.*,
   513 F.3d 1038 (9th Cir. 2008) .................................................................. 18

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*OptoLum, Inc. v. Cree, Inc.*,
    244 F. Supp. 3d 1005 (D. Ariz. 2017)..........................................................18

*Parks LLC v. Tyson Foods, Inc.*,
    863 F.3d 220 (3d Cir. 2017)..........................................................10

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*,
    2021 WL 2188219 (D. Del. May 28, 2021)..........................................18, 19

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
    953 F.2d 724 (1st Cir. 1992)..........................................................22

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018)..........................................................9

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020)..........................................................17

*R & A Synergy LLC v. Spanx, Inc.*,
    2019 WL 4390564 (C.D. Cal. May 1, 2019)......................................11, 18, 22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,
    806 F.2d 1393 (9th Cir. 1986)..........................................................8

*Sears, Roebuck & Co. v. Stiffel Co.*,
    376 U.S. 225 (1964)..........................................................5

*Sleep Sci. Partners v. Lieberman*,
    2010 WL 1881770 (N.D. Cal. May 10, 2010)..........................................11

*Soilworks, LLC v. Midwest Indus. Supply, Inc.*,
    575 F. Supp. 2d 1118 (D. Ariz. 2008)..........................................................18

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)..........................................................22

*Tomek v. Apple, Inc.*,
    2012 WL 2857035 (E.D. Cal. July 11, 2012)..........................................18

*Tracy Anderson Mind & Body, LLC v. Roup*,
    2022 WL 17670418 (C.D. Cal. Dec. 12, 2022)....................................7, 18, 19

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001)..........................................................12

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)..........................................................13

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987)..........................................................8

*Vess v. Ciba–Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)..........................................................8, 9

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013).............................................16

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010)..............................................................8

*Williams & Lake LLC v. Genesis Sys. LLC*,
   2017 WL 6418937 (D. Ariz. Sept. 13, 2017)...............................18

*Zekkariyas v. Universal Music-MGB Songs*,
   2011 WL 13220325 (C.D. Cal. June 6, 2011) ............................13


**STATE CASES**

*Bernardo v. Planned Parenthood Fed'n of Am.*,
   115 Cal. App. 4th 322 (2004)........................................................24

*City of Cotati v. Cashman*,
   29 Cal. 4th 69 (2002)......................................................................23

*Fox Searchlight Pictures, Inc. v. Paladino*,
   89 Cal. App. 4th 294 (2001)...........................................................23

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003).........................................................20

*Navellier v. Sletten*,
   29 Cal. 4th 82 (2002)........................................................................9

*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008).......................................................23

*Rivero v. Am. Fed'n of State, Cty., & Mun. Emps., AFL–CIO*,
   105 Cal. App. 4th 913 (2003).........................................................23


**FEDERAL STATUTES**

15 U.S.C. § 1125(a) ...............................................................................7

15 U.S.C. § 1125(a)(1)(A).....................................................................16

15 U.S.C. § 1125(a)(1)(B)..................................................................9, 17


**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.*................................................7

Cal. Bus. & Prof. Code §§ 17500 *et seq.*................................................7

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Cal. Civ. Proc. Code § 425.16 ...................................................................8

Cal. Civ. Proc. Code § 425.16(b)(1)......................................................9, 23

Cal. Civ. Proc. Code § 425.16(c)(1)............................................................24

Cal. Civ. Proc. Code § 425.16(e)(3)-(4).................................................23, 24

**FEDERAL RULES**

C.D. Cal. Loc. R. 7-3 .................................................................................7

Fed. R. Civ. P. 12(b)(6) ..................................................................7, 11, 18

Fed. R. Civ. P. 12(f) ..................................................................................8

Fed. R. Civ. P. 9(b) ..................................................................................19

**FEDERAL REGULATIONS**

21 C.F.R. § 182.20......................................................................................4

21 C.F.R. § 184.1033(a) ..............................................................................4

**OTHER AUTHORITIES**

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:9 (5th ed. Dec. 2022 Update) .........................................................10

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

Defendant KinderFarms LLC ("Defendant" or "KinderFarms") hereby submits this Memorandum of Points and Authorities in support of its Motion to Dismiss, Motion to Strike, and Special Motion to Strike (the "Motion"):

## I.   __INTRODUCTION__

Founded by parents, KinderFarms provides families with effective, values-driven medicine and health products.  KinderFarms produces hydration products under its KinderLyte brand, organic protein shakes under its KinderSprout brand, and over-the-counter ("OTC") medicine products under its KinderMed brand.

Genexa, Inc. ("Genexa") and KinderFarms compete in only three products in the OTC medicine product category currently, and that is the only product category the companies overlap.  They use different trade names, different ingredients, and different packaging to present their products to consumers.

Instead of competing with KinderFarms on the merits of their products, Genexa chose to hire lawyers to file a fatally flawed Complaint riddled with easily disprovable claims and incorrect facts.  Genexa will fail in its misguided strategy to restrict fair competition in the clean OTC medicine industry as the Complaint is a house of cards that falls under the weight of its own allegations.

Genexa devotes paragraphs to complain about how KinderFarms "copied" the ingredients, but these allegations are refuted by Genexa's own Complaint.  Genexa claims it came up with a revolutionary way to replace artificial preservatives with a combination of agave syrup and "citrus extract," but KinderFarms uses citric acid.  Citric acid is not the same as "citrus extract."  Thus, Genexa's "copying" theory makes no sense.  But this is all a meritless distraction because Genexa sold its medicine to the public without a patent.  As such, its products are in the public domain.

Genexa then alleges KinderFarms "copied" its packaging to "confuse" consumers, but Genexa does not own any trademark rights in its packaging.  Even if it did, the pictures reveal stark and fundamental differences, including the trade names ("KinderMed" is not "Genexa"), the layout and design elements on the front, as well

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

as the fonts, size, placement, colors, and materials (KinderMed uses distinctive metallic foil), and the design elements themselves (a female lion is not a multi-colored unicorn). Even worse, Genexa deliberately chose not to show pictures of its other medicine products, as those packages reveal even starker differences. KinderFarms submits those packaging designs so the Court and public are fully informed.

Genexa then cobbles together random statements coupled with hyperbolic language and scare tactics to present false advertising claims that fail as a matter of law. Even though KinderFarms has not made any claim that it was the "originator" of the clean OTC medicine industry, Genexa claims that this is implied from statements made by KinderFarms' co-founder on national talk shows where she recounted her personal experiences as a mother. While Genexa is deliberately misinterpreting these public statements, in any event, it is well-established that claims to "invent" or "originate" a product constitute mere puffery.

Genexa also asserts an implausible false advertising theory that claims the co-founder statement on the back of KinderFarms' package would lead a reasonable consumer to disregard clear overdose warnings directly below and adjacent to the statement. No reasonable consumer would interpret the package in this manner, and the claim should be dismissed as a matter of law.

At bottom, Genexa has sour grapes that another company has chosen to offer clean OTC medicine for children. In the midst of a national shortage, now is not the time for irresponsible lawsuits asserting bogus theories in an attempt to restrict supply. Genexa did not serve KinderFarms with a cease-and-desist letter or seek any non-judicial mechanism to resolve any genuine issue it may have. Rather, it conducted, at best, a superficial investigation and filed this meritless lawsuit.

After Genexa filed this lawsuit, KinderFarms and one of its investors provided Genexa with evidence refuting its allegations and warned Genexa that continued prosecution of this case raises ethical concerns. Genexa has, at present, refused to dismiss this lawsuit. As such, KinderFarms must defend itself and bring this Motion.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

2

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S COMPLAINT

## II.     BACKGROUND

### A.     Parties

Genexa alleges that it is an Atlanta-based company founded in 2014 with the goal of providing consumers with clean alternatives to OTC medicine products. (Compl. ¶ 15.)  By "clean" alternatives, Genexa explains that its medicine products use the same effective, active ingredients in OTC products produced by conventional pharmaceutical companies, but without the artificial inactive ingredients such as "artificial preservatives, dyes, sweeteners, or common allergens."  (*Id*. ¶¶ 14-16.) Genexa was a homeopathy and dietary supplements company exclusively until it launched its OTC products in 2020.

KinderFarms is a limited liability company headquartered in Redondo Beach that produces clean products for infants and children sold in the Kids and Baby OTC drug aisles.  (*Id*. ¶ 9.)  KinderFarms produces a wide range of products for parents who want clean alternatives for their infants and children.  In 2019, KinderFarms released, as its first line of products, clean electrolyte beverage products using the KinderLyte trade name.  (*Id*. ¶ 30.)  In 2021, KinderFarms released, as its second line of products, organic protein shakes using the KinderSprout trade name.  (*Id*.)  In 2022, KinderFarms released a line of clean OTC medicine products using the trade name KinderMed.  (*Id*. ¶ 33.)

### B.     Summary Of Genexa's Allegations

Genexa asserts three theories of liability:  (1) KinderFarms "copied" Genexa's OTC medicine products and packaging; (2) KinderFarms engaged in false advertising by claiming to be the "originator" of the clean OTC medicine industry and that its products are "non-toxic"; and (3) KinderFarms interfered with Genexa's contracts with a potential investor and former employee.  These theories are summarized below.

#### 1.     Genexa Claims KinderFarms Copied Products and Packaging That Were Already in the Public Domain

Genexa claims that, in its view, "[v]irtually everything" about KinderFarms'

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

OTC medicine products "copies or mimics Genexa's products." (Compl. ¶ 35.) Genexa alleges that KinderFarms "copied" Genexa by using the same names to describe the products (*id.* ¶¶ 35-36), the same or similar ingredients (*id.* ¶ 37), and the same packaging (*id.* ¶¶ 38-39). Genexa alleges that this "copying" creates the "prospect of confusion and reverse confusion in the marketplace" in violation of Section 43(a) of the Lanham Act. (*Id.* ¶ 66.)

Genexa claims that it chose names for its products that were "arbitrary and different" from those commonly used by conventional pharmaceutical companies because Genexa used the term "Kids'" as opposed to "Children's" and an ampersand ("&") instead of the word "and." (*Id.* ¶ 36.) So, according to Genexa, the conventional OTC medicine products were named "Children's Pain and Fever" and Genexa made an "arbitrary" decision to change that name to "Kids' Pain & Fever." (*Id.*) Genexa fails to allege, however, that it owns any trademark rights in the description of its products, that the descriptions of its products have acquired secondary meaning among consumers, or that it owns any copyrights in those product descriptions. *See Higgins v. Keuffel*, 140 U.S. 428, 431 (1891) (copyright law does not protect mere labels or titles which "simply designate or describe the articles to which they are attached").

As for its ingredient claims, Genexa claims that it came up with a novel method of using agave syrup and citrus extract to replace artificial preservatives in conventional OTC medicine products (Compl. ¶ 17), but KinderFarms' OTC medicine products use citric acid—not citrus extract[1] (*id.* ¶ 37.) Genexa alleges that its products were first sold to the public in 2020 (*id.* ¶ 21), but Genexa fails to allege that it owns any patents in its OTC medicine products or the method to produce those

---

[1] The FDA defines citric acid as the compound "2-hydroxy-1,2,3-propanetricarboxylic acid." 21 C.F.R. § 184.1033(a). The FDA defines extracts and essential oils differently. *See id.* § 182.20.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

products.  Genexa's products are therefore in the public domain.  *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 (1964) ("An unpatentable article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so."); *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 149 (1989) ("Once an inventor has decided to lift the veil of secrecy from his work, he must choose the protection of a federal patent or the dedication of his idea to the public at large.").

As for its packaging claims, Genexa alleges that the layouts of the packages are "almost identical, as are the color, design, type font, and other wholly arbitrary design elements," such as the placement of the founder statement, the description of the ingredients, the use of a tag line, and the use of an animal on the front.  (*See* Compl. ¶ 39.)  Genexa does not allege that any of these "design" elements are protectable intellectual property or that any of these elements have acquired secondary meaning among consumers.  (*Id.*)  Genexa shows a photograph of its kids' pain and fever product compared to KinderFarms' kids' pain and fever product (*id.* ¶ 38), but it does not include photographs of Genexa's and KinderFarms' other products.

### 2.    Genexa's False Advertising Claims

Genexa's second theory is that KinderFarms falsely markets and advertises its OTC medicine products.  Genexa claims that it was the "originator" of the clean OTC medicine industry, but that KinderFarms is attempting to convince customers that it is the "originator" of this industry.  (Compl. ¶ 40.)  Genexa does not allege that KinderFarms made any affirmative statement claiming to be the "originator" of this industry.  (*Id.*)  Genexa does not allege that KinderFarms made any claim that its products were the first and only products in the market.  (*Id.*)  Genexa does not allege that KinderFarms made any statement that references Genexa in any way.  (*Id.*)  Instead, Genexa alleges that KinderFarms made this "originator" claim by implication through public statements by KinderFarms' co-founder when she appeared on national talk shows.  (*Id.*)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

Genexa also alleges that KinderFarms markets its products as "non-toxic," which, according to Genexa, is false and misleading. (*Id.* ¶¶ 44-51.) Genexa admits that the active ingredients in KinderFarms' products have been approved by the FDA and are safe for infants and children when taken in appropriate dosages (*id.* ¶ 46), and it does not allege that any of the inactive ingredients in KinderFarms' products are toxic. Instead, Genexa claims that the term "non-toxic" is false and misleading because consumers can have adverse health outcomes if they use the medicine with "impunity" far in excess of FDA-recommended guidelines. (*Id.* ¶¶ 46-51.) The Complaint shows that KinderFarms' products contain the FDA-required warnings—including overdose warnings—on the packaging and directly underneath and adjacent to the challenged statement. (*Id.* ¶ 37.)

### 3.    Genexa's Interference Allegations

Genexa's third theory is that KinderFarms interfered with Genexa's contracts with a potential investor who declined to invest and a former employee. As to the former investor, Genexa alleges "on information and belief" that the investor signed an NDA with Genexa, obtained Genexa's confidential information during the due diligence phase, and breached the NDA by sharing that information with KinderFarms. (Compl. ¶¶ 52-59.)

As to the former employee (Annika Berman ("Berman")), Genexa alleges, again on "information and belief," that KinderFarms induced Berman to work on its FDA filings while she was still employed by Genexa. (*Id.* ¶¶ 60-62.) Genexa alleges that Berman took a day off work before she resigned to assist KinderFarms with its FDA filings which were made on that same day and that Berman was essential for KinderFarms to prepare and make the necessary filings. (*Id.*)

These allegations are easily disproven, and the interference claims are subject to dismissal on summary judgment.

### C.    Procedural History

Genexa filed the Complaint on December 22, 2022. [ECF Dkt. No. 1.] It

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

alleges violations of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), violations of California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq.*), and interference with contract and unfair competition in violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).

After Genexa filed the Complaint, KinderFarms and its investor served Genexa with written correspondence refuting the factual claims set forth in the Complaint and attaching documentary evidence directly refuting Genexa's claims. (Declaration of David W. Schecter ("Schecter Decl.") ¶ 2.)

On January 3, 2023, KinderFarms served Genexa with a letter per Local Rule 7-3 setting forth the pleading deficiencies in the Complaint and informing Genexa that KinderFarms will move to dismiss and strike certain claims and allegations in the Complaint. (*Id.* ¶ 3.) Counsel for the parties met and conferred by telephone on January 6, 2023. (*Id.* ¶ 4.) Despite counsel's efforts, the parties could not reach agreement on the issues, thus necessitating this Motion. (*Id.*)

## III. **LEGAL STANDARDS**

### A. **Rule 12(b)(6) Motion to Dismiss**

A district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

District courts in the Ninth Circuit apply a heightened pleading standard for false advertising claims. *Tracy Anderson Mind & Body, LLC v. Roup*, 2022 WL 17670418, at *4 (C.D. Cal. Dec. 12, 2022); *EcoDisc Tech. AG v. DVD Format/Logo*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) ("Although the Ninth Circuit has not concluded that Rule 9(b) applies to Lanham Act claims, many district courts have applied this heightened pleading standard to claims that are grounded in fraud, such as misrepresentation claims."). "To satisfy Rule 9(b), Plaintiff must state the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *EcoDisc Tech.*, 711 F. Supp. 2d at 1085 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Plaintiffs must also set forth what is false and misleading about the statement and why it is false. *Id.* (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

**B.    Rule 12(f) Motion To Strike**

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omited).

**C.    Anti-SLAPP Special Motion To Strike**

The anti-SLAPP statute, California Code of Civil Procedure section 425.16, "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). Anti-SLAPP motions are evaluated in

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

two steps. First, the movant must make a threshold showing that the act or acts giving rise to the claim were in furtherance of the right of petition or free speech or in connection with a public issue.  Cal. Civ. Proc. Code § 425.16(b)(1); *see, e.g.*, *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (applying California's anti-SLAPP law).

Second, if the movant meets its burden, the nonmovant must show a probability of prevailing on the challenged claim.  *Hilton*, 599 F.3d at 903.  A nonmovant satisfies this burden by showing that the claim is legally sufficient and supported by a prima facie showing of facts sufficient for a judgment in the nonmovant's favor if the evidence relied on is credited.  *See Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002).

Ninth Circuit courts apply the anti-SLAPP statute to California state law claims brought in federal court.  *Vess*, 317 F.3d at 1109.  Where "a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6)."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (citation omitted).

## IV.   ARGUMENT

### A.   Genexa Fails To State A Claim For Trade Dress Infringement

Genexa alleges that KinderFarms' statements and packaging that "copy" Genexa's packaging create consumer confusion and reverse confusion in violation of Section 43(a) of the Lanham Act.  (Compl. ¶ 66(a).)  This is an attempt to allege infringement of unregistered trade dress.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) ("Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B).").  During the meet and confer, Genexa claimed that it was not asserting a trade dress infringement claim, but rather was only asserting false advertising under 15 U.S.C. § 1125(a)(1)(B).  (Schecter Decl. ¶ 5.)  But "copying" and "customer confusion" are only relevant for false association (i.e., trademark

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

infringement) claims.  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1095 (9th Cir. 2013) ("The *sine qua non* of trademark infringement is consumer confusion."); *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (applying the *Sleekcraft* factors in reverse confusion cases, including strength or arbitrariness of the mark; the relatedness of the parties' goods; and the similarity of the marks); *Apple Inc. v. Amazon.com Inc.*, 915 F. Supp. 2d 1084, 1090 (N.D. Cal. 2013) (summarily dismissing the false advertising count as an infringement claim improperly packaged as a false advertising claim). Like the failed attempts of other plaintiffs, Genexa frames its "copying" allegations as false advertising to lower its evidentiary burden, which it cannot do.  *See, e.g., Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226, 230 (3d Cir. 2017) (rejecting plaintiff's attempt to frame a false association claim as a false advertising claim, which required less proof); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:9 (5th ed. Dec. 2022 Update) ("An unregistered trademark infringement (or 'false association') claim cannot be re-packaged as a false advertising claim in order to avoid having to prove the validity of a trademark.").)

Thus, to support its "copying" and "customer confusion" allegations, Genexa must state a claim for infringement of its unregistered trademarks or trade dress.  This includes asserting plausible allegations that it owns valid trademark rights that KinderFarms infringed.

### 1.    Genexa Fails to Define Its Trade Dress

It is the "plaintiff's duty to 'articulat[e] the specific elements which comprise its distinct dress.'"  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014) (alteration in original) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); McCarthy, *supra*, § 8.3 ("[T]he discrete elements which make up [the trade dress claim] must be separated out and clearly identified in a list.").  "This allows the district court to ensure that the claim is not 'pitched at an improper level of generality, i.e., the claimant [does not] seek[]

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  protection for an unprotectable style, theme or idea." *Fair Wind Sailing*, 764 F.3d at

2  309 (alterations in original) (quoting *Landscape Forms*, 113 F.3d at 381).

3       Courts routinely dismiss unregistered trade dress claims where plaintiffs fail to

4  specify the claimed trade dress.  *See, e.g.*, *R & A Synergy LLC v. Spanx, Inc.*, 2019

5  WL 4390564, at *5 (C.D. Cal. May 1, 2019) (plaintiff failed to identify "with

6  sufficient specificity" a protectable trade dress in a basic design of a sleeved

7  undergarment); *Sleep Sci. Partners v. Lieberman*, 2010 WL 1881770, at *3 (N.D. Cal.

8  May 10, 2010) (dismissing claim of infringement of a website's "look and feel" as an

9  inadequate description because "[w]ithout an adequate definition of the elements

10  comprising the website's 'look and feel,' [defendant] is not given adequate notice");

11  *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 WL 6892141, at *3

12  (C.D. Cal. Nov. 5, 2014) (dismissing a definition of "color scheme, fonts,

13  phraseology, and overall look and feel" of blender packaging as too vague).

14       Instead of listing the distinctive features of its package that constitute source-

15  identifying trade dress, Genexa lists the elements of its package that are, in its view,

16  similar to KinderFarms' package.  (Compl. ¶¶ 35-39.)  But Genexa makes no claim

17  that the allegedly similar elements are part of Genexa's distinctive and protectable

18  "trade dress."

19       Genexa's claim cannot be saved because it included pictures in the Complaint.

20  *Crafty Prods., Inc. v. Michaels Cos., Inc.*, 424 F. Supp. 3d 983, 993 (S.D. Cal. 2019)

21  (dismissing with prejudice on a Rule 12(b)(6) motion a claim for infringement of

22  alleged trade dress in various wooden mask designs, as "the Court decline[d] to

23  independently inspect each and every exhibit and scour the pictures for one design

24  that is entirely nonfunctional"), *aff'd* 839 F.. App'x 95 (9th Cir. 2020); *see also Int'l*

25  *Leisure Prods., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 26 (2d Cir. 2018) ("[A] visual

26  representation of the asserted trade dress does not excuse 'the party seeking

27  protection' from its burden of 'point[ing] to the elements and features that *distinguish*

28  its trade dress.'" (second alteration in original) (citation omitted)). It was Genexa's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   burden to specify its claimed trade dress and not show pictures that require the Court

2   and KinderFarms to guess as to what Genexa's alleged "trade dress" actually is.  The

3   claim should be dismissed on this basis alone.

4                        **2.**      **Genexa's Alleged Trade Dress Is Functional**

5           A plaintiff suing for infringement of unregistered trade dress must allege that

6   the asserted trade dress is not functional.  *TrafFix Devices, Inc. v. Mktg. Displays*,

7   *Inc.*, 532 U.S. 23, 29 (2001).  The Supreme Court split functionality into two types,

8   each with its own legal test.  *Id.* at 32-33.  The two types are "utilitarian functionality,"

9   which is based on how well the product works, and "aesthetic functionality," which

10  is based on how good the product looks.  *Blumenthal Distrib., Inc. v. Herman Miller,*

11  *Inc.*, 963 F.3d 859, 865 (9th Cir. 2020).  Using the four-factor *Disc Golf* test, a claimed

12  trade dress has utilitarian functionality if it is essential to the use or purpose of a

13  product or affects its cost or quality.  *Id.* (citing *Disc Golf Ass'n, Inc. v. Champion*

14  *Discs, Inc.*, 158 F.3d 1002 (9th Cir. 1998)).  A claimed trade dress has aesthetic

15  functionality if it serves "an aesthetic purpose wholly independent of any source

16  identifying function," such that the trade dress's protection under trademark law

17  "would impose a significant non-reputation-related competitive disadvantage" on its

18  owner's competitors.  *Id.* (citation omitted).

19          Genexa's claimed "trade dress," as vaguely alleged in the Complaint, is some

20  undefined combination of the placement of founder statements, ingredient lists, and

21  descriptive names for products (i.e., Kids' Pain & Fever).  Each one of these

22  components is clearly functional—they describe the product and how to use it.  That

23  is not protectable trade dress.  *See, e.g., Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp.

24  2d 911, 1007 (C.D. Cal. 2011) (recognizing certain packaging features as functional).

25          In fact, Genexa admits that these elements are functional.  For example, Genexa

26  admits that the layout and marketing tag lines associated with its ingredient list are

27  designed "to provide families with full transparency and make it easy for families to

28  see what ingredients appear in the OTC products they buy."  (Compl. ¶ 26.)  Genexa's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400     FAX: (310) 552-8400

1  trade dress claim fails for this separate and independent reason.

### 3.   There Is No Alleged Secondary Meaning

If the product packaging is not inherently distinctive, a plaintiff making a trade dress claim must plead and prove that its packaging design has acquired secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767 (1992). The predominant test for inherent distinctiveness asks whether "(1) the design or shape is a common, basic shape or design; (2) it was unique or unusual in a particular field; and (3) it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods which consumers view as mere ornamentation." *Mattel*, 782 F. Supp. 2d at 1004 (citation omitted).

Genexa does not plausibly allege that its packaging is inherently distinctive, and it has not alleged that its packaging or any specific design element thereof has acquired secondary meaning. Nowhere in the Complaint does Genexa even allege, let alone plausibly so, that the placement of its ingredient list, the placement of its founder statement, or the description of the nature and use of its product has acquired secondary meaning. The claim fails for this independent reason. *See Zekkariyas v. Universal Music-MGB Songs*, 2011 WL 13220325, at *2 (C.D. Cal. June 6, 2011) (granting motion to dismiss under *Twombly* for failure to plausibly allege plaintiff's name had acquired a secondary meaning); *Advertise.com, Inc. v. AOL, LLC*, 2010 WL 11519510, at *1-2 (C.D. Cal. Mar. 23, 2010) (granting motion to dismiss for failing to adequately allege an unregistered trademark had acquired a secondary meaning).

### 4.   There Is No Alleged Likelihood of Confusion

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to *the origin* of the good or service bearing one of the marks." *Dreamwerks Prod. Grp.,*, 142 F.3d at 1129 (emphasis added). Additionally, there is a heightened standard when the ordinary consumer is "discriminating," in the sense that he or she will look more closely at the product before making a purchasing decision. *See, e.g.*, *Luigino's, Inc. v. Stouffer*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Corp.*, 170 F.3d 827, 831-32 (8th Cir. 1999) (diet-conscious consumers tend to examine food packages more carefully to determine source and caloric content). This is particularly true with respect to parents purchasing medicine for their children, especially parents looking for "clean" medicine as Genexa admits. (Compl. ¶ 27 ("Genexa takes pride in providing families, many of whom are exceptionally skeptical of the 'Big Pharma' OTC medicinal products available, with products they can trust.").)

Nowhere in the Complaint has Genexa alleged confusion as to the source or origin of the products. Rather, Genexa claims KinderFarms has created confusion as to (1) "which company is the innovator," (2) whether other clean medicine products are available to consumers, (3) whether KinderFarms is the original clean medicine company and (4) a "reverse confusion" impression that Genexa copied KinderFarms. (*Id.* ¶¶ 41-43.) None of these claims are actionable under the Lanham Act as trade dress infringement because they do not allege confusion with respect to origin or source. *Dreamwerks Prod. Grp.*, 142 F.3d at 1129.

Furthermore, there are so many fundamental and stark differences between the packaging of each party's respective products that any claim of customer confusion is implausible. *Iqbal*, 556 U.S. at 678; *see, e.g., Miller v. Easy Day Studios Pty Ltd.*, 2021 WL 4209205, at *8 (S.D. Cal. Sept. 16, 2021) (dismissing trademark claim on the pleadings as plaintiff's allegations of customer confusion were simply not plausible on their face). A few examples illustrate the point:

|  | **Genexa** | **Kinder**Med |
|---|---|---|
| Tradename | The tradename **Genexa** is centered at the top with letters reading left to right all in bold[2] | The tradename **Kinder**Med is on the left side perpendicular to the other text with letters reading bottom to top with a |

[2] The font is also different. For example, the "e" in Genexa has a horizontal line in the middle to complete the letter, whereas the "e" in KinderMed has an upward sloping line to complete the letter.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| | | mix of bold and non-bold font |
|---|---|---|
| Product Description | Genexa describes its product as "Kids' Pain & Fever" in the bottom portion with "Kids' Pain" in the first line and "& Fever" in the second line | KinderFarms describes its product near the top of the package, and it inserts "Ages 2-11 years" after "Kids'" on the first line with "Pain & Fever" on the second line |
| Tag Line | Genexa includes its tag line "Real Medicine Made Clean" underneath its tradename in the middle of the upper portion of the package with text only on two horizontal lines | KinderMed includes its tag line in the upper right-hand corner of the package with the tagline "Real Medicine Kinder Ingredients" in two arched lines that together form a circle around the "The **Kinder** Pledge" |
| Package Design | Genexa uses black and white text with a female lion (a real animal) in red in the center of the front of the package sitting underneath an orange sun | KinderMed uses blue, silver and pink text with a multi-colored unicorn (not a real animal) on the bottom of the front of the package peering over a thick blue border (like a baby standing up in his or her crib) with stars, clouds and a rainbow as the image continues on the right-hand side |
| Ingredient List | Genexa uses a drawing of a bottle and lists its ingredients each in bubbles | KinderMed counts the ingredients ("5") and shows that number while also separating the ingredients into real medicine and clean inactives using pink and blue font, with a rainbow, stars and clouds as a design on the bottom |

(Compl. ¶ 38.)  No reasonable consumer would be confused as to the source of these products.

    This is even further demonstrated by the fact that both companies use different

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

tradenames.  *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1134 (Fed. Cir. 1993) (no likelihood of confusion as a matter of law even where there is evidence of secondary meaning where consumers are sophisticated and the products are sold under different names.).  There is no claim that "KinderFarms" or "KinderMed" is in any way confusingly similar to "Genexa."

Genexa fails to include images of the packaging for its other products.  This was intentional, as it shows that Genexa does not use a red female lion to indicate the source of its products, and there is no way any reasonable consumer could be confused as to source.  Genexa uses a pink or salmon colored whale to market its cough and congestion product.  KinderMed uses a blue and green dragon.[3]

 

These images confirm that there is no likelihood of confusion, and any attempt to amend would be futile.  Accordingly, the Court should dismiss Count I for failure to state a claim for false association under 15 U.S.C. § 1125(a)(1)(A) pursuant to Rule 12(b)(6), and strike paragraphs 35-39, 43 and 66 pursuant to Rule 12(f).

---

[3] "A court 'need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit'" or other materials central to or incorporated by reference into the complaint, including allegedly false advertising.  *Gershman v. Bayer HealthCare LLC*, 2015 WL 2170214, at *2 (N.D. Cal. May 8, 2015) (citation omitted); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 883 (C.D. Cal. 2013) (considering allegedly false labeling).

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTIONS TO DISMISS AND STRIKE PLAINTIFF'S COMPLAINT

**B.    Genexa Fails To State A Claim For False Advertising**

A false advertising claim under 15 U.S.C. § 1125(a)(1)(B), as Genexa attempts here, requires "a 'false or misleading representation of fact' 'in commercial advertising or promotion' that 'misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.'" *Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020) (citation omitted).  Such a claim requires a plaintiff to allege and prove: "(1) defendants' false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually or tended to deceive a substantial segment of its audience; (3) the deception is material and is likely to influence a purchasing decision; (4) defendants caused the false statement to enter interstate commerce; and (5) the plaintiff is or is likely to be injured due to the false statement, whether through direct diversion of sales or by a lessening of goodwill associated with plaintiff's products." *Cannarella v. Volvo Car USA LLC*, 2016 WL 9450451, at *7 (C.D. Cal. Dec. 12, 2016).

Genexa appears to allege two theories to support its false advertising claim brought under Section 43(a) of the Lanham Act.  Neither theory is adequately alleged.

**1.    The "Originator" Claim Is Not Actionable**

The Complaint does not allege that KinderFarms made any affirmative statements claiming to be the "originator" of the OTC clean medicine industry, but Genexa claims that statements by KinderFarms' co-founder on social media and national talk shows could be construed to make this claim by implication.  (Compl. ¶¶ 40-41.)  Even assuming Genexa's theory is based on reasonable inferences from KinderFarms' public statements (which it is not), a claim to be an "originator" of an industry is mere puffery that is not actionable as a matter of law.

Puffery is defined as statements that are opinionated and outlandish such that no reasonable consumer would rely on them to make a purchasing decision.  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1990). Whether an alleged misrepresentation is a statement of fact or mere puffery is a legal question that may be resolved on a Rule 12(b)(6) motion. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008); *Cook, Perkiss & Liehe*, 911 F.2d at 245-46.

By now, it is well-established that claims to be the inventor or "originator" of an idea are purely subjective and constitute mere puffery that are not actionable under the Lanham Act. *See, e.g., Tracy Anderson Mind & Body*, 2022 WL 17670418, at *5 (finding "[c]laims that a defendant invented a product to fill a gap in the market, and the resulting implications regarding the innovativeness of a defendant's product, constitute puffery rather than an assertion of fact"); *R & A Synergy*, 2019 WL 4390564, at *10 ("Merely advertising a product as being new, invented, filling a white space, and being unlike other layering options does not amount to an assertion of fact."); *Williams & Lake LLC v. Genesis Sys. LLC*, 2017 WL 6418937, at *8 (D. Ariz. Sept. 13, 2017) (defendants' claims of authorship or inventorship of its vehicle braking system were not actionable false or misleading statements under the Lanham Act); *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1011 (D. Ariz. 2017) (holding that defendant's assertion that its technology was a "genius idea" is purely subjective upon which no reasonable buyer would rely); *Tomek v. Apple, Inc.*, 2012 WL 2857035, at *4 (E.D. Cal. July 11, 2012) (statements that the MacBook Pro is a "breakthrough" that provides "huge leaps in performance" were puffery); *Soilworks, LLC v. Midwest Indus. Supply, Inc.*, 575 F. Supp. 2d 1118, 1133 (D. Ariz. 2008) (holding that claims that a company was the "innovator" of a product constituted puffery because those claims are general, vague, and not measurable).

The recent decision by the Delaware District Court in *Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 2188219 (D. Del. May 28, 2021), is particularly instructive. That case involved a dispute between two at-home fitness companies. ICON claimed that its competitor, Peloton, engaged in false advertising under the Lanham Act when Peloton claimed that it is an "innovator" and a "very

Miller Barondess, LLP
Attorneys at Law
1999 Avenue of The Stars, Suite 1000 Los Angeles, California 90067
Tel: (310) 552-4400   Fax: (310) 552-8400

hardcore technology company" that produces a bike that is "first of its kind." The court held that these statements were not objective statements of fact, but rather mere puffery. *Id*. at *6 (statements like "new and improved" and "first of its kind" are classic puffery). ICON also claimed that Peloton's CEO falsely implied that Peloton has no competitors when the CEO stated that, "[n]obody else provides them, so we're kind of a category of one." *Id*. at *7. The court held that this too was not actionable under the Lanham Act. *Id.* (collecting cases where courts found similar statements like "a step above the rest" and "industry leader" to be mere puffery).

Accordingly, Genexa's claims that KinderFarms engaged in false advertising by making an *implied* claim to be the true "innovator" of the clean OTC medicine industry (Compl. ¶¶ 40-41) fall well short of the mark. Any attempt to amend would be futile, and therefore this claim should be dismissed without leave to amend.

## 2.   <u>Genexa's "Non-Toxic" Theory Fails</u>

Genexa claims that KinderFarms engaged in false advertising because the term "non-toxic" gives consumers the false impression that they can take the medicine in excess of the FDA recommended dosages that are on the package. (Compl. ¶¶ 47-48.) Claims for false advertising must meet the heightened pleading requirements for Rule 9(b). *Tracy Anderson Mind & Body*, 2022 WL 17670418, at *4. This requires plaintiffs to not just allege the "who, what, when, why, where," but also allege with particularity how the challenged statements are false or misleading. *EcoDisc Tech.*, 711 F. Supp. 2d at 1085. Genexa's "non-toxic" theory is not adequately alleged for three reasons.

First, no reasonable consumer would read KinderFarms' co-founder statement on the back of the package and then disregard the numerous overdose warnings and conclude that the product was safe to give his or her child a dosage that exceeded directions on the package. When evaluating false advertising claims under the Lanham Act, courts use a "reasonable consumer" test. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). Liability does not attach because

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   theoretically "some consumers could unreasonably misunderstand the product." *Id.*

2   at 1230 (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016)).

3       It is well-established that courts must take into account all the information

4   available to consumers and the context in which that information is provided and used.

5   *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (citing *Bell v. Publix*

6   *Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)).   Courts are not compelled to

7   accept a plaintiff's unreasonable interpretation of an otherwise clear and accurate

8   statement.  *Id.* at 882-83 ("[W]here plaintiffs base deceptive advertising claims on

9   unreasonable or fanciful interpretations of labels or other advertising, dismissal on the

10  pleadings may well be justified." (citation omitted)).

11      Here, Genexa fails to plausibly allege how consumers could be misled into

12  believing that they could disregard the warnings and directions for use on the package.

13  (Compl. ¶ 38.)  In large font underneath the heading **Warnings** it states "Severe liver

14  damage may occur if your child takes: ■ more than 5 doses in 24 hours, which is the

15  maximum daily amount ■ with other drugs containing acetaminophen."  (*Id.*)  The

16  warnings continue in sections titled "**Do not use**" and "**Keep out of reach of**

17  **children.**"  (*Id.*)   There is also a specific warning about overdoses:  "**Overdose**

18  **warning:** Taking more than the recommended dose (overdose) may cause liver

19  damage.  In case of overdose, get medical help or contact a Poison Control Center (1-

20  800-222-1222) right away.  Quick medical attention is critical even if you do not

21  notice any signs or symptoms."  (*Id.*)

22      Genexa's theory is that consumers will read KinderFarms' co-founder

23  statement about why the founders established the company and then completely

24  disregard these warnings to endanger their children.  This theory is preposterous and

25  implausible.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see*

26  *id.* at 504 (rejecting a "least sophisticated consumer" standard).

27      In fact, Genexa's Complaint alleges just the opposite.  Genexa alleges that

28  consumers of its products and KinderFarms' products are predominantly parents who

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

are looking for alternative medicine products *for their children*.  (Compl. ¶¶ 27, 50.) These are not consumers of low-cost grocery items who buy the product solely based on misleading claims made in large font or in pictures prominently displayed on the front of the package.  Rather, per Genexa's own allegations, these are "consumers electing to purchase clean medicine products [who] *care about what they and their children are ingesting.*"  (*Id.* ¶ 50 (emphasis added).)

Genexa also fails to allege that directions for use and product warnings are hidden or defective in some manner.  And it could not make such an allegation because these are FDA-required warnings and directions that both companies display on their packaging as required and per good business practice to make sure consumers are informed about how to safely use the medicine.  (*Id.* ¶ 38.)

Second, no reasonable consumer would think that "non-toxic" is a statement of fact about the active ingredient in the bottle.  The founder statement, read in totality, makes clear that KinderFarms was founded to offer what it believes to be "cleaner options."  (*Id.* ¶ 44.)  As Genexa admits in its Complaint, both Genexa and KinderFarms use the same active ingredient as existing products in the market but use different inactive ingredients.  (*Id.* ¶ 16 (Genexa's "clean" products use the same active ingredients as Tylenol, Mucinex, and Robitussin "but without any of the unnecessary artificial ingredients"), ¶ 34 ("Genexa and KinderFarms are the only two companies actively engaged in the production and sale of 'clean' OTC medicine products.").)  Genexa fails to assert any well-pled allegations of fact showing that a reasonable consumer would read "non-toxic" in KinderFarms' founder statement as a reference to the actual pharmaceutical drug.

Third, even if some consumers could unreasonably construe the term "non-toxic" as a reference to the pharmaceutical drug and even if those few consumers could think that they could disregard the warnings on the package, the claim still fails because "non-toxic" is not an objective statement of fact about KinderFarms' OTC medicine products.  The Complaint reveals no industry accepted definition of "toxic"

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

or "non-toxic."  Indeed, the Complaint fails to allege any definition or standard by which any court or trier-of-fact could determine whether a medicine product was "toxic" or "non-toxic."  These are subjective and imprecise terms that are not "capable of verification or refutation by means of objective proof."  *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 n.7 (1st Cir. 1992).

At bottom, this is a preposterous claim made by a competitor who is grasping at straws in an attempt to erect obstacles to legitimate competition.  Genexa's false advertising claims are not actionable under the Lanham Act and should be dismissed.

### C.        The State Law Claims Fail For The Same Reasons

Genexa asserts its same "copying" and false advertising allegations that support its Lanham Act claims also support claims for violations of the FAL and UCL. (Compl. ¶¶ 77-85, 97-99.)  But these claims fail for the same reasons as above.

The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims under the Lanham Act."  *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994).  And courts in this circuit have repeatedly dismissed derivative UCL claims as a result.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) (affirming dismissal of UCL claim where plaintiff could not state a claim under the Lanham Act, among other grounds); *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 (9th Cir. 2002) (plaintiff's "California unfair competition claim fails because its related Lanham Act claims fail"); *R & A Synergy*, 2019 WL 4390564, at *15 ("Plaintiff's state law claim for unfair competition realleges the same facts and reasserts the same arguments as embodied by Plaintiff's Lanham Act claims").

### D.        Genexa's "Originator" Claim And Supporting Allegations Should Be Stricken Per California's Anti-SLAPP Statute

In evaluating an anti-SLAPP motion, the court engages in a two-step analysis. First, the court "decides whether the defendant has made a threshold showing that the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

challenged cause of action is one 'arising from' protected activity."  *City of Cotati v. Cashman*, 29 Cal. 4th 69, 76 (2002); Cal. Civ. Proc. Code § 425.16(b)(1).  Once that showing is made, the burden shifts to the plaintiff to "establish[] that there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b)(1).

### 1.    Genexa's "Originator" Claim Arises from Protected Activity

California's anti-SLAPP statute identifies two categories of protected activity applicable here: (1) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (2) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.  Cal. Civ. Proc. Code § 425.16(e)(3)-(4).

For the anti-SLAPP statute to apply, it suffices if just part of the challenged cause of action arises from one of these protected activities.  *See Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 308 (2001) (plaintiff "cannot frustrate the purpose of the SLAPP statute [by] combining allegations of protected and nonprotected activity under the label of one 'cause of action'").  The "public interest" requirement is construed broadly.  *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008).

Speech is considered "in connection with an issue of public interest" if it concerns: (1) "a person or entity in the public eye"; (2) "conduct that could directly affect a large number of people beyond the direct participants"; or (3) "a topic of widespread, public interest."  *Rivero v. Am. Fed'n of State, Cty., & Mun. Emps., AFL–CIO*, 105 Cal. App. 4th 913, 924 (2003).  Here, Genexa's claim falls within all three.

As alleged in the Complaint, KinderFarms' co-founder is a "famous actress" who, at various times, appeared on a series of television talk shows to discuss children's medicine in front of a national audience. (Compl. ¶ 4.)  In support of its Lanham Act, false advertisement, and unfair competition claims, Genexa seeks to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

hold KinderFarms liable for a "personal anecdote" whereby its co-founder recounts her son's illness and her personal realization that she did not understand the ingredients in the available OTC children's medicine offerings and that she wanted to create an alternative for parents who share her values.  (*Id.* ¶ 40).

Because these alleged statements were made in a "public forum in connection with an issue of public interest" and constitute "other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest," prong one of the anti-SLAPP law is satisfied.  Cal. Civ. Proc. Code § 425.16(e)(3)-(4); *Tracy Anderson Mind & Body, LLC*, 2022 WL 17670418, at *9 (C.D. Cal. Dec. 12, 2022).

### 2.   Genexa's Claim Lacks Probable Merit

Per Section IV.B.1 *infra*, any claim to be an "originator" or inventor" of a product or industry constitutes mere puffery as a matter of law that cannot be actionable under California's FAL or UCL.  Thus, Genexa's claim lacks probable merit, and KinderFarms is entitled to its attorneys' fees and costs.  Cal. Civ. Proc. Code § 425.16(c)(1) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs."); *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 364 (2004).[4]

## V.   CONCLUSION

For the foregoing reasons, the Court should grant the Motion.

---

[4] KinderFarms will file a separately noticed motion to establish the amount of those fees and costs.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  DATED:  January 13, 2022          MILLER BARONDESS, LLP

2

3

4                                        By:  _____

5                                              DAVID W. SCHECTER
                                              Attorneys for Defendants
6                                              KINDERFARMS LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400