UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 22-9291-MWF (SKx)                    Date:  April 14, 2023
Title:  Genexa, Inc. v. Kinderfarms LLC

Present:     The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                              Court Reporter:
Rita Sanchez                               Not Reported

Attorneys Present for Plaintiff:           Attorneys Present for Defendant:
None Present                               None Present

Proceedings (In Chambers):        ORDER GRANTING IN PART, DENYING IN
                                  PART DEFENDANT'S MOTION TO
                                  DISMISS CLAIMS ONE, TWO, AND FOUR
                                  AND TO STRIKE PARAGRAPHS OF THE
                                  FIRST AMENDED COMPLAINT [22]

Before the Court is Defendant KinderFarms LLC's ("Defendant" or "KinderFarms") Motion to Dismiss Claims One, Two, and Four and to Strike Paragraphs of the First Amended Complaint ("FAC"), filed on February 17, 2023. (The "Motion" (Docket No. 22)).  Plaintiff Genexa Inc. ("Plaintiff" or "Genexa") filed an Opposition on March 6, 2023.  (Docket No. 25).  Defendant filed a Reply on March 20, 2023.  (Docket No. 26).

The Court has considered the papers filed in connection with the Motion and held a hearing on April 10, 2023.

The Motion is **GRANTED** *in part* and **DENIED** *in part* as follows:

- The Motion is **GRANTED** *with leave to amend* to the extent it seeks dismissal of the false advertising claims.  The statement that "clean and effective ingredients" were "missing from the pharmacy aisle" is nonactionable puffery because no reasonable consumer would rely on the claim as a statement of fact.  Additionally, Plaintiff fails to allege a plausible theory of falsity based on the "non-toxic" claim contained in a mission statement printed in small-print on the side of the products'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**               **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

packaging.  Though Plaintiff suggests that the products are not "non-toxic" because they can cause serious harm when consumed in excess, no reasonable consumer would interpret the "non-toxic" claim to suggest that the products can be consumed without reference to dose given the several contrary messages on the packaging and the nature of the products (i.e., medicine).

   o Because the Court reaches these conclusions as a matter of law, the Court is highly skeptical that additional allegations will change the result.  But given the Ninth Circuit has made it clear that leave to amend should be granted with extreme liberality, the Court will grant Plaintiff *one* opportunity to amend.

• The Motion is **DENIED** to the extent it seeks to strike certain paragraphs of the FAC under California's anti-SLAPP statute because the relevant speech does not concern a significant public issue.

## I.   **BACKGROUND**

The Court summarizes the allegations in the FAC in the light most favorable to Plaintiff as follows:

Plaintiff Genexa was founded in 2014 with the goal of revolutionizing the over-the-counter ("OTC") industry by providing consumers a "clean" alternative — i.e., OTC medicines with the same effective active ingredients as its name-brand counterparts but whose inactive ingredients are natural as opposed to synthetic.  (FAC ¶¶ 14, 15).  In November 2022, approximately two years after Plaintiff released its "clean" medicine products, Defendant KinderFarms launched its line of OTC "clean" medicine products under the brand name "KinderMed" (the "Products").  (*Id.* at ¶¶ 3, 31).

Plaintiff alleges that two advertising messages made by Defendant are false and/or misleading and provide Defendant with an unfair advantage in the marketplace.  The first alleged false and/or misleading claim concerns a promotional video published

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
**Title:  Genexa, Inc. v. Kinderfarms LLC**

and re-published by Defendant to advertise its KinderMed Products.  In the video, the well-known actress, Jessica Biel, who is a "co-founder" and the face of KinderFarms, introduces the Products and relates her experience as a parent that "…there was a really major missing element in the pharmacy aisle, there is nothing with clean and effective ingredients" (the "Pharmacy Aisle Claim").  (*Id.* at ¶ 38).  Plaintiff alleges that the Pharmacy Aisle Claim "has caused customers to question whether Genexa's pre-existing 'clean' medicine products are in fact clean at all."  (*Id.* at ¶ 39).

The second alleged false and/or misleading claim concerns a statement located on the packaging of a "majority" of Defendant's Products.  (*Id.* at ¶ 40).  Plaintiff alleges that Defendant falsely markets its OTC medicine Products as "non-toxic" through a co-founder statement on the side of the Products' packaging (the "Non-Toxic Claim").  The statement describes why the founders created the company as follows:



(*Id.* ¶ 40) (highlight added by Plaintiff).

The Non-Toxic Claim is located on one side of a four-panel box for the Products.  For context, the Court provides an image of the four panels of the box for the "Kids Pain & Fever" Product within the KinderMed product line, as it appears in the FAC as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**

**Title:  Genexa, Inc. v. Kinderfarms LLC**



(*Id.* ¶ 36) (highlight present on real packaging).

Plaintiff alleges that the Non-Toxic Claim is false and misleading and is also dangerous because the Products are "***not*** "non-toxic" health products." (*Id.* ¶¶ 41-42) (emphasis in original).  Focusing on Defendant's Pain & Fever Product, Plaintiff alleges that the Product contains the active ingredient acetaminophen, and "the consensus in the medical community" is that "acetaminophen is a toxic substance." (*Id.* ¶¶ 42-43).  Plaintiff acknowledges, however, that acetaminophen can be safe when "used properly and in accordance with the recommended daily dosage." (*Id.* ¶ 42).  Plaintiff cites to two scientific articles noting that "acetaminophen is toxic when taken in excess both acutely and chronically."  (*Id.* ¶¶ 43).  Plaintiff also cites online research indicating that consumers do not always read the ingredients listed on OTC labels and that consumers spend less time viewing warnings as compared to other aspects of a products' packaging.  (*Id.* ¶ 45).  Plaintiff also alleges that Defendant's Kids' Cough and Congestion Product (which contains active ingredients

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 22-9291-MWF (SKx)          Date:  April 14, 2023

Title:  Genexa, Inc. v. Kinderfarms LLC

Dextromethorphan HBr and Guaifenesin) and Defendant's Kids' Nighttime Cold and Cough Product (which contains Diphenhydramine HCl and Phenylephrine HCl) also include the Non-Toxic Claim on their packaging, and the Claim is allegedly false and misleading when it appears on those packages for the same reason.  (*Id.* ¶ 48).

Plaintiff further alleges that Defendant interfered with Plaintiff's contract with a former employee.  Specifically, Plaintiff contends that Defendant induced the former employee to work on Defendant's FDA filings while she was still employed by Plaintiff.  (*Id.* ¶¶ 52-55).

Based on these allegations, Plaintiff brings four claims for relief against Defendant as follows: (1) violation of the Lanham Act for False Advertising and Unfair Competition (15 U.S.C. § 1125 (a)(1)(B)); (2) False Advertising under California Law (Cal. Bus. & Prof. Code § 17500, *et. seq.*); (3) Intentional Interference with Contractual Relations; and (4) Unfair Competition under California Law (Cal. Bus. & Prof. Code § 17200, *et. seq.*).

Defendant moves to dismiss claims one, two, and four for failure to state a claim under Rule 12(b)(6) and seeks to strike certain paragraphs of the FAC under California's anti-SLAPP statute.

## II.   **LEGAL STANDARD**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.  "To survive a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**

Title:  Genexa, Inc. v. Kinderfarms LLC

motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Id*. at 995 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake." *Becerra v. Dr Pepper/Seven Up, Inc*., 945 F.3d 1225, 1228 (9th Cir. 2019) (noting Rule 9(b)'s applicability to false advertising claims).  This includes "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted).  In fraud cases, plaintiffs "must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc*., 42 F.3d 1541, 1548 (9th Cir. 1994).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

## III.   DISCUSSION

### A.   Motion to Dismiss

There are five elements of a false advertising claim under Section 43(a) of the
Lanham Act:

> (1) a false statement of fact by the defendant in a commercial
> advertisement about its own or another's product; (2) the
> statement actually deceived or has the tendency to deceive a
> substantial segment of its audience; (3) the deception is
> material, in that it is likely to influence the purchasing decision;
> (4) the defendant caused its false statement to enter interstate
> commerce; and (5) the plaintiff has been or is likely to be
> injured as a result of the false statement, either by direct
> diversion of sales from itself to defendant or by a lessening of
> the goodwill associated with its products.

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012).

State law claims for false advertising and unfair competition pursuant to
California Business and Professions Code are "substantially congruent" to claims made
under the Lanham Act.  *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)
("This Circuit has consistently held that state common law claims of unfair
competition and actions pursuant to California Business and Professions Code § 17200
are 'substantially congruent' to claims made under the Lanham Act.") (internal
citations omitted); *Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152–53
(9th Cir. 1996), *abrogated on other grounds* (dismissal of plaintiff's FAL and UCL
claims were proper since plaintiff's Lanham Act claim was properly dismissed).
Accordingly, the Court considers Plaintiff's claims arising under the Lanham Act and
the California Business and Professions Code in tandem.

False advertising claims are governed by the "reasonable consumer" test.
*Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted).

---

**CIVIL MINUTES—GENERAL**                                                          **7**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 22-9291-MWF (SKx)                    Date:  April 14, 2023
Title:  Genexa, Inc. v. Kinderfarms LLC

"Under the reasonable consumer standard, [the plaintiff] must show that members of the public are likely to be deceived." *Id.* (internal quotation marks and citation omitted).  "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (internal quotation marks and citation omitted); *accord Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)  (noting "a false advertising cause of action under the [Lanham] Act is not limited to literal falsehoods; it extends to false representations made by implication or innuendo").  The "reasonable consumer" standard "requires more than the 'mere possibility' that a label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner'; it instead requires 'a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Millam v. Energizer Brands, LLC*, No. CV 21-01500-JWH (SHKx), 2022 WL 19001330, at *3 (C.D. Cal. Dec. 9, 2022) (citing *Ebner*, 838 F.3d at 965 (quotations and citations omitted).

"[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision" at the motion to dismiss stage.  *Gerber*, 552 F.3d at 938. However, dismissal is appropriate where "the advertisement itself ma[kes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Id.* at 939.  Courts in the Ninth Circuit have granted motions to dismiss where the context of the advertisement and/or qualifying language "make the meaning of the representation clear." *Millam*, 2022 WL 19001330, at *3 (citing *Sponchiado v. Apple Inc.*, Case No. CV 18-07533-HSG, 2019 WL 6117482, at *3 (N.D. Cal. Nov. 18, 2019)) (collecting cases).  The Ninth Circuit has recently reiterated that "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882–83 (9th Cir. 2021) (quotations and citation omitted)).  And "the determination of whether an alleged misrepresentation 'is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**

Title:  Genexa, Inc. v. Kinderfarms LLC

a statement of fact' or is instead 'mere puffery' is a legal question[.]" *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 105 (9th Cir. 2008).

### 1.  Pharmacy Aisle Claim

In a promotional video published by Defendant to advertise its KinderMed Products, Jessica Biel states that she created KinderMed after recounting that she noticed in shopping for her own kids, "…there was a really major missing element in the pharmacy aisle, there is nothing with clean and effective ingredients."  (FAC at ¶ 38).  Plaintiff argues that this Pharmacy Aisle Claim falsely implies that KinderFarms is the "***only*** producer of clean medicine ***and***, by implication, that Genexa's products are not clean."  (Opposition at 12) (emphasis in original) (citing FAC ¶ 39).  Defendant argues that the Pharmacy Aisle Claim is non-actionable puffery.

An advertising statement may be non-actionable if it constitutes "puffery," which is defined as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely."  *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139, 1145 (9th Cir. 1997).  Puffery includes "statement[s] of fact [in]capable of being proved false," statements that are not "specific and measurable," or statements that otherwise cannot be "reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*., 173 F.3d 725, 731 (9th Cir. 1999); *see also Glen Holly Ent., Inc. v. Tektronix Inc.,* 343 F.3d 1000, 1015 (9th Cir. 2003) (establishing that "generalized, vague, or unspecific assertions" constitute non-actionable puffery).  A statement is also considered puffery if the claim is extremely unlikely to induce consumer reliance.  *Newcal*, 513 F.3d at 1054.  "Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim."  *Tracy Anderson Mind & Body, LLC v. Roup*, No. CV 22-4735-RSWL (Ex), 2022 WL 17670418, at *5 (C.D. Cal. Dec. 12, 2022) (citing *Cook*, 911 F.2d at 246).

In considering whether the Pharmacy Aisle Claim is puffery, both parties invoke conflicting lines of authorities regarding similar claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 22-9291-MWF (SKx)                    Date:  April 14, 2023

Title:  Genexa, Inc. v. Kinderfarms LLC

Defendant argues that the Claim fits into a line of cases in which companies or company representatives have stated that their products were "innovative," "new" and/or filled "white space" in the market.  Such claims have been deemed non-actionable by several courts.  (Reply at 7) (citing *Tracy Anderson*, 2022 WL 17670418, at \*4-6 (dismissing false advertising claim because the statements by the founder of the defendant fitness company — that she "knew there was something missing from the boutique fitness community" so she "developed" a particular method that was unlike anything in the market — were mere puffery and not actionable); *R & A Synergy LLC v. Spanx, Inc*., No. CV 17-09147-SVW (ASx), 2019 WL 4390564, at \*10 (C.D. Cal. May 1, 2019) ("Merely advertising a product as being new, invented, filling a white space, and being unlike other layering options does not amount to an assertion of fact."); *Peloton Interactive, Inc. v. ICON Health & Fitness, Inc*., No. CV 20-662-RGA, 2021 WL 2188219, at \*7 (D. Del. May 28, 2021) (dismissing false advertising claim, holding that the statements by Peloton's CEO that Peloton has no competitors and "we're kind of a category of one" were mere puffery).

On the other hand, Plaintiff argues that the Pharmacy Aisle Claim fits into a separate line of cases where courts have concluded that claims that a company or product was "first" to achieve a specific milestone are actionable.  (Opposition at 13) (citing *Zobmondo Ent. LLC v. Imagination Int'l Corp*., No. CV 09-02235-ABC (PLAx), 2009 WL 8714439, at \*4-\*5 (C.D. Cal. June 23, 2009) (concluding that the plaintiff could proceed with action against the defendant company who named its board game "Original Would You Rather . . .? Board Game" because the name could falsely imply that the defendant physically manufactured the first such board game); *Conopco Inc. v. Wells Enterprises, Inc*., No. 14 CIV 2223-NRB, 2015 WL 2330115, at \*4 (S.D.N.Y. May 14, 2015) (holding that the phrase "the Original Firecracker" could falsely (or misleadingly) imply that the defendant's product was the "first of its kind" and the original rocket ice pop, and therefore was not puffery); *Blue Spike, LLC v. Tex. Instruments, Inc*., Case Nos. 12-cv-499, 12-cv-576, *report & recommendation adopted*, 2014 WL 11848751, at \*6 (E.D. Tex. July 25, 2014) (determining that the defendant's statements "impl[ied] it was the first to create" a technology, which could be actionable under the Lanham Act); *Suzie's Brewery Co. v. Anheuser-Busch Companies, LLC*, 519 F. Supp. 3d 839, 847-48, 851 (D. Or. 2021) (granting a TRO

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**               **Date:  April 14, 2023**

Title:  Genexa, Inc. v. Kinderfarms LLC

after concluding that the plaintiff was likely to succeed on the merits on showing that the defendant's advertisements indicating that its brand of seltzer was the "first-ever" national United States Department of Agriculture ("USDA") certified organic hard seltzer was false because there was evidence that the defendant received the USDA certification two months after the plaintiff).

Therefore, the question here is whether Ms. Biel's statement, allegedly implying that Defendant sells the "only" clean and effective medicine on the market, fits more squarely within Defendant's non-actionable "innovative" cases or Plaintiff's actionable "first-to-achieve" cases.  Despite the parties' arguments to the contrary, the Court does not see a precise dividing line that neatly differentiates all of the cited cases, but rather, there is some inherent tension between certain of the holdings.  A claim that a product is in "a category of one" seems to imply the same message as a claim that a product is "first of its kind," yet courts have come to different conclusions with respect to those claims.  *Compare Peloton*, 2021 WL 2188219, at *7 (concluding "category of one" claim was mere puffery) *with Conopco*, 2015 WL 2330115, at *4  (concluding claim implying product was "first of its kind" was actionable).

However, it appears to the Court that the most well-reasoned of the cases can roughly be distinguished based on *what* the defendant is allegedly describing and whether that description is *measurable*.  The cases concluding that innovative-type claims are not actionable seem to concern claims that *generally* describe attributes of the defendant's product as compared to other products on the market; whereas the cases allowing first-to-achieve-type claims to proceed tend to concern claims that the defendant is the "first" company or person to achieve a narrow and *specific* objective, that can be measured in units of time, separate and apart from any qualitative assessment of a products' attributes.  For instance, the cases that Plaintiff relies on involved instances where the defendant was claiming to be "first" to achieve a specific milestone (e.g., being the first *to manufacture* in *Zobmondo* and being the first *to obtain USDA certification* in *Suzie*'s).  However, when a company is claiming that its product is "innovative" or "fills a gap" in the market, the claim inevitably depends on a subjective assessment of how other products compare, which is not an issue capable of direct measurement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

Here, considering the context of the Pharmacy Aisle Claim and the Claim itself, the Court concludes that the Claim is closer to the "innovative" line of cases.  Plaintiff contends that the Pharmacy Aisle Claim implies that Plaintiff's products are not "clean and effective" – and therefore, to prove that the Claim is false necessarily requires a subjective assessment of the products' general attributes.  The Claim cannot be measured solely by reference to time because the Claim is not about who invented or sold its products first.  This conclusion is reinforced by the fact that the actual phrases used by Ms. Biel are much more analogous to the phrases the district courts viewed as puffery in *R & A Synergy* and *Tracy Anderson* than to any of the phrases used in the cases cited by Plaintiff.

In *R & A Synergy*, the defendant offered sleeved undergarments, and the defendant's CEO was quoted in a newspaper article as saying "[t]ights have been around for our legs for so many years, I was thinking, '***Why aren't there tights for our arms***?'" despite the fact that the plaintiff sold sleeved undergarments years before the defendant.  *R & A Synergy*, 2019 WL 4390564, at *9 (emphasis added).  The district court reasoned that the claim was analogous to the non-actionable "innovative" claims that have been rejected by several courts because "[n]o reasonable consumer would rely" on such a statement as an "objective, measurable statement of fact."  *Id.* at *11.  Just like the CEO in *R & A Synergy* suggesting there was no comparable product on the market, here too, the Court concludes that Ms. Biel's statement, indicating that in her view, "clean and effective ingredients" were "missing from the pharmacy aisle," is not an "objective, measurable statement of fact."  *See id.* at *9, *11.  No reasonable consumer would rely on Ms. Biel's statement.  Rather, reasonable consumers would understand her statement to be an ***opinion*** regarding the inferiority of other available products on the market.  Such opinions are non-actionable puffery.  *See id.* at *11.

Likewise in *Tracy Anderson*, the defendant was employed by the plaintiff but left to create her own company.  The defendant, in her website biography, stated:  "I knew that there was ***something missing from the boutique fitness community***, so I combined my passion for dance and love for fitness to create The Sculpt Society."  *Tracy Anderson,* 2022 WL 17670418, at *4.  The plaintiff complained that the founder's statement falsely implied that the defendant had invented a fitness method

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

that was "significantly different from [the p]laintiffs" when it was allegedly the same method.  *Id.*  The district court disagreed that such a statement was actionable, concluding that the statement "convey[ed] a general, vague, and unmeasurable assertion regarding inventorship and the innovativeness of [the d]efendants' products." *Id*.  Here too, Ms. Biel's statement that in her experience, something was "missing from" the pharmacy aisle, is likewise a "general, vague, and unmeasurable" assertion regarding inventiveness.  *See id.*

Accordingly, the Motion is **GRANTED** to the extent it seeks dismissal of claims one, two, and four based on the Pharmacy Aisle Claim.

## 2.  The Non-Toxic Claim

Although Plaintiff's second theory of falsity has more force, it still falls short. The Non-Toxic Claim is found within Ms. Biel's mission statement printed on the side of the Products' packaging, which states: "We founded KinderFarms® to make the effective, ***non-toxic*** health products we wanted for our own families available to everyone.  By offering cleaner options that are backed by science, we promise to do our part to create a kinder future for every family."  (FAC ¶ 36; *see also id.* ¶ 40) (emphasis added).  Because Plaintiff focuses on Defendant's Pain & Fever Product (the product with acetaminophen), the Court focuses the analysis on that Product as well but notes that the following reasoning applies to the other KinderMed Products detailed in the FAC that use the same packaging and have other active ingredients.

Plaintiff contends that Defendant's statement, that it makes "non-toxic" health products, is false because its Products contain active ingredients like acetaminophen and "there is a consensus in the medical community" that "acetaminophen is a toxic substance."  (FAC ¶¶ 42-43).  The Court could imagine a case where prominent use of the word "non-toxic" on a medicine bottle might be false, misleading, and/or as Plaintiff contends, dangerous.  While that possibility has given the Court pause, this action is one of the rare cases where the context of the Claim simply cannot be ignored as it dispels any possible theory of deception.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 22-9291-MWF (SKx)                    Date:  April 14, 2023
Title:  Genexa, Inc. v. Kinderfarms LLC

Plaintiff's claim of deception is complicated by the fact that Plaintiff never explicitly defines or even clearly explains what it is contending are the true definitions (or even connotations) of the terms "toxic" and "non-toxic." Without any such definitions, it is hard, if not impossible, to determine if Plaintiff has stated a false advertising claim.

The closest Plaintiff ever gets to defining the term "toxic" is in the Opposition where Plaintiff states, the active ingredients are *not* 'non-toxic' at all as they can cause serious bodily harm." (Opposition at 2) (emphasis in original). But if "toxic" simply means that a substance can cause serious bodily harm, without further qualification, then Plaintiff cannot plausibly characterize acetaminophen as "toxic" given Plaintiff alleges, and the FDA agrees, that acetaminophen is *safe* for infants and children to ingest when taken in appropriate dosages. (*See* FAC ¶ 42). Plaintiff contends, however, that Defendant has wrongly equated "safety" with "the absence of toxicity." (Opposition at 7). How can a product both be safe and toxic? Plaintiff never explicitly says, but the only way to explain Plaintiff's position is by reference to *dose*.

Therefore, because it is the only rational way to read Plaintiff's FAC, the Court presumes that that Plaintiff is describing as "toxic," any ingredient that *can be* harmful or unsafe *at a certain dose*. This is repeatedly confirmed by Plaintiff's own allegations, which discuss acetaminophen's *potential* to cause harm at *excess* dosages. (Opposition at 2; *see also* FAC ¶ 43) ("[A]cetaminophen is toxic when taken in excess both acutely and chronically."); *see also id.* (citing https://www.chp.edu/our-services/transplant/liver/education/liver-disease-states/acetaminophen-toxicity) ("Acetaminophen is an effective pain-relieving and fever-reducing agent when taken in the recommended daily dose."); *see also id*. ("Acetaminophen (brand name Tylenol®) is a safe, effective pain reliever and fever reducer for children and adolescents. But giving your child more than the recommended dose can lead to acetaminophen toxicity, which can cause liver damage and even death if untreated.").

Therefore, by implication, Plaintiff necessarily suggests that something is "non-toxic" if it is safe *without reference to dose*. In other words, the Non-Toxic Claim is false because the Product can cause serious harm when taken in excess (i.e., beyond

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

the recommended dosages).  When so defined, the flaw in Plaintiff's theory becomes clear.  No reasonable consumer could read the Non-Toxic Claim in the ***small, fine print*** on the ***side*** of the Product's box, after reading the front of the box, and thereafter conclude that Kinder***Med*** is safe at any dose (or even safe at any dose other than those stated).  It defies reason, and is even contradicted by Plaintiff's own allegations, that a consumer would ever read the fine print on the side of the box (where the statement with the Non-Toxic Claim can be found), ***before*** viewing the big and bold messages on other parts of the packaging.  (*See* FAC ¶ 45) ("An average consumer does not carefully read the fine print[.]").  For context, the Court reposts the front and alternative side panel (without the Non-Toxic Claim) of the Product's packaging, as follows:

 

(FAC ¶ 41) (images taken from website linked in FAC for image clarity); *see also id*. ¶ 36 (posting smaller version of the same image within FAC).

Just by reading the front label, a consumer will see that the Product contains "acetaminophen," is described as a "Med," and comes with a "dosing cup."  And then, the medicine messaging continues on one side of the box, which states in bold, capitalized, and large font, that the Product contains "REAL MEDICINE."  A reasonable consumer would not read this box and conclude that the medicine is safe at any dose.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

But even if the front and alternative side of the box does not sufficiently alert the consumer, surely the statement where the claim is found puts in context the meaning of "non-toxic."  The following image replicates the statement within which the Non-Toxic Claim is made:



(FAC  ¶ 40) (highlight added by Plaintiff).

As depicted by the above image, the Claim is made within a statement signed by the Products' "Co-founder and Parent," Jessica Biel, who is a well-known famous actress — not someone that is, purports to be, or is thought of as a doctor.  Further, the statement is clearly a mission statement, describing Ms. Biel's ***motivation*** for making the Products and her vision for the company.  Given the box repeatedly emphasizes that the Product is "clean," and given the author and purpose of the statement, reasonable consumers would not read "non-toxic" in Ms. Biel's statement to convey medical information.  Rather, the only plausible way to read "non-toxic," in the context of the full statement, and in light of the rest of the packaging, is as a reference to Ms. Biel's hopes and opinions regarding the properties of the ***inactive ingredients***, which are the ingredients that differentiate the Product from ordinary Tylenol.

Plaintiff argues that there "is nothing in the 'non-toxic' representation on the [P]roducts' packaging that limits the 'non-toxic' claims only to the inactive ingredients" but rather, the Claim says that Ms. Biel sought to make "non-toxic health ***products***."  (Opposition at 7) (emphasis in original).  Therefore, Plaintiff argues, "an average consumer would likely interpret the statement to refer to all ingredients—both the active and non-active ingredients."  (*Id*.).  However, Plaintiff's own allegations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 22-9291-MWF (SKx)       **Date:** April 14, 2023

Title: Genexa, Inc. v. Kinderfarms LLC

tend to undermine this argument. As Plaintiff explains, "[b]ecause the entire premise of 'clean' medicines is to reduce synthetic, ***potentially harmful inactive ingredients*** and incorporate organic and naturally occurring ingredients, consumers electing to purchase clean medicine products care about what they and their children are ingesting," and "given the motivations and predilections of consumers seeking to purchase 'clean' medicines," "[c]onsumers, choosing between two products, one offering the assurance that it is non-toxic and the other not making that claim, are likely to choose the former." (FAC ¶¶ 49-50) (emphasis added). Given these allegations, Plaintiff suggests that the consumers buying Defendants' Products are likely to read the "non-toxic" claim as describing the ***clean inactive ingredients*** as potentially less harmful than its competitors.

But even if consumers do not read the Non-Toxic Claim as referring only to the inactive ingredients, the bolded "***Drug Facts***" box, placed ***immediately below*** the Claim, which explicitly contains appropriate ***dosages*** per age group, dispels any notion that this Product can be taken without reference to dose. The Court reposts the side of the package that contains the Non-Toxic Claim as provided in the FAC as follows:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

(FAC ¶ 36).

The front of the box messaging, the context of the Claim itself, and the dosage information on the same panel as the Claim, are all context that serves to sanitize any potential misunderstanding regarding the Non-Toxic Claim all ***before*** one even looks to the several bolded FDA warnings on the back panel of the packaging.  Yet, Plaintiff's arguments almost exclusively rely on cases where a prominent label on the front of a package is contradicted by a fine-print back label.  Here, without even considering the back panel of the packaging, the Non-Toxic Claim does not imply what Plaintiff suggests.

At the hearing, Plaintiff's counsel reiterated that the Court must accept the allegations as true, including the allegations regarding consumer studies, which indicate that only 26% of a sample indicated that they read the active ingredients on an OTC label and that only 42% said they read everything on the label when taking an OTC medication for the first time.  (FAC ¶ 45).  The Court readily accepts these allegations as true.  But ***even if true***, they do not make Plaintiff's theory any more plausible because a consumer does not even have to look at the warnings on the back of the label to conclude that the "non-toxic" claim cannot mean that the Product is safe at any dose, as described extensively above.

While consideration of the back panel certainly strengthens the Court's conclusion, the back panel warnings merely confirm (rather than contradict) the messaging conveyed by the rest of the packaging — that the Product is "REAL MEDICINE" that must be taken at prescribed dosages.  (*See* Motion at 18) (citing FAC ¶ 36) (noting that the back of the Product's package states, underneath the heading "***Warnings***" that "[s]evere liver damage may occur if your child takes: ■ more than 5 doses in 24 hours, which is the maximum daily amount; the back panel also includes sections titled "***Do not use***" and "***Keep out of reach of children***;" there is also a warning about overdoses which states: "Overdose warning: In case of overdose, get medical help or contact a Poison Control Center (1-800-222-1222) right away.  Prompt medical attention is critical even if you do not notice any signs or symptoms").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

The Court deems the Ninth Circuit's recent opinion in *Moore* to be particularly instructive.  There, the Ninth Circuit affirmed the dismissal of a false advertising claim on a motion to dismiss because the plaintiffs' theory was implausible.  In *Moore*, the product at issue was Trader Joe's Manuka Honey, which it described on the front of the bottle as "100% New Zealand Manuka Honey."  4 F.4th at 878.  The plaintiffs alleged that this label was false because only between 57.3% and 62.6% of the honey came from Manuka flower nectar, with the remainder coming from other floral sources.  *Id*. at 880.

The Ninth Circuit rejected this argument, concluding that "a reasonable consumer would be quickly dissuaded from [the p]laintiffs' 'unreasonable or fanciful' interpretation of '100% New Zealand Manuka Honey'" based on key "contextual inferences from the product itself," including "the impossibility of making a honey that is 100% derived from one floral source." *Id.* at 884.  The court noted that "given the sheer implausibility of [the p]laintiffs' alleged interpretation, a consumer of any level of sophistication could not reasonably interpret Trader Joe's label as [the p]laintiffs assert" and therefore, the district court did not err in dismissing the false advertising claim.  *Id.* at 884-85.

Here too, the Court considers probative the impossibility of Plaintiff's interpretation of the word "non-toxic."  Plaintiff's reading of the Non-Toxic Claim is that it implies that the medicine is safe to consume without reference to dose.  Yet, as the old adage goes, "the dose makes the poison," given anything in excess can be toxic. Therefore, like in *Moore*, Plaintiff's reading suggests that Defendant is claiming something impossible since no substance (and especially not a medicine) is safe to consume at any dose.  *See id.* at 884.  Therefore, beyond the contextual clues provided by the packaging itself, the reality and common sense understanding of the nature of the Product renders Plaintiff's theory implausible.  *See id.*; *see also Becerra v. Dr Pepper/Seven Up, Inc*., 945 F.3d 1225, 1230 (9th Cir. 2019) (affirming dismissal of a complaint because the plaintiff's alleged interpretation of "diet" describing Dr. Pepper's soft drink as promising to help with weight loss was "unreasonabl[e]" given consumers generally understand the word "diet" to refer only to the caloric content of the soft drink, not to imply that the drink is a weight-loss product).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

At the hearing, Plaintiff's counsel made a point to contrast this action to the outlandish claim rejected in *Becerra*, but considering the context of the Non-Toxic Claim, the Court is not necessarily convinced that a consumer who reads "non-toxic" to mean that a clearly labeled ***medicine*** is safe without reference to dose is any more reasonable than a consumer who believes the word "diet" conveys that a ***soft drink*** is a weight-loss product.

At the hearing, counsel also argued that this action is different from *Moore* because in *Moore*, the court was dealing with a very specific consumer looking for a niche product (i.e., Manuka honey), whereas here we are discussing the general public. The problem is that the FAC contradicts such an argument, stating that "consumers electing to purchase clean medicine products care about what they and their children are ingesting and are selecting KinderMed products because of its messaging."  (FAC ¶ 49).  Counsel argued that this allegation cuts in Plaintiff's favor because the type of consumer that desires this Product wants something different from ordinary Tylenol, and therefore, could interpret the Non-Toxic Claim as differentiating the Product from Tylenol in its propensity to cause serious bodily harm when taken in excess.

But the same could have been said about the consumers in *Moore* in that consumers purchasing Manuka honey could have been specifically attracted to the "100% Manuka Honey" label precisely because they were Manuka honey enthusiasts and would therefore choose the brand promising the highest percentage of honey from the Manuka flower source.  But the Ninth Circuit rejected this notion, holding that the only reasonable conclusion was that consumers interested in specialty honey will be alert to other context clues, such as the purity rating on the package and the price of the honey.  *See Moore*, 4 F.4th at 883-85.  Here too, in the Court's view, the allegation that Defendant's consumers deeply care about what their children are ingesting only serves to undermine the plausibility that those same consumers would believe that Defendant's Products can be taken without reference to dose based on a celebrity's mission statement printed on the side panel of the packaging, despite the provided dosing cup and the repeated messaging that the Product is "REAL MEDICINE" with "active ingredients."  (*See* FAC ¶ 36).

---

**CIVIL MINUTES—GENERAL**                                                   **20**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

Plaintiff primarily relies on two inapposite cases in the Opposition.  First, Plaintiff cites to a district court case denying a motion to dismiss where the defendant, a convenience store chain, advertised that consumers would receive a discount on cigarettes if they purchased "two" in an advertisement featuring images of packs of cigarettes.  *Petterson v. Circle K Stores Inc.*, No. CV 21-00237-H-BGS, 2021 WL 1749899, at *1-*2 (S.D. Cal. May 4, 2021).  The plaintiff purchased several **cartons** of cigarettes (as opposed to packs) but did not receive a discount because the defendant contended that the advertisement only applied to packs, not cartons, of cigarettes.  The court noted that the defendant's "advertisements d[id] not expressly exclude discounts on purchases of cartons" and in fact, one of the advertisements did "not even say that it applies to packs" it "simply state[d] that the consumer will get a discount if he or she 'buy[s] two.'"  *Id.* at *4.  Therefore, the court concluded that it was "not one of the rare situations" when the advertisement itself was dispositive.  *Id.*

Although Plaintiff explains the facts of *Petterson* at some length, Plaintiff never actually applies the facts of that case to this action or explains how they are similar.  (*See* Opposition at 9).  The Court fails to see the comparison.  Unlike in *Petterson*, where there was nothing in the advertisement explicitly excluding the plaintiff's reading of the claim, here the packaging **does** expressly contradict Plaintiff's reading because it specifically prescribes the appropriate dose for each age group, in addition to including several other indications and warnings that the Product must be consumed with care.

Plaintiff also cites to the Ninth Circuit's opinion in *Williams* to argue that the "Drug Facts" panel that provides dosage information immediately below the Non-Toxic Claim does not negate the possibility that consumers would be misled.  (Opposition at 10) (citing *Williams*, 552 F.3d at 940–41).  But *Williams* is inapposite.  In *Williams*, the defendant's fruit juice snack depicted all sorts of fruits on **the front label** but the ingredient list **on the side panel** disclosed that "the only juice contained in the product was white grape juice from concentrate." 552 F.3d at 936.  The Ninth Circuit reasoned that the ingredient list did not "provide a shield for liability for the deception" elsewhere on the packaging because "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                  **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

the truth from the ingredient list in small print on the side of the box."  *Id.* at 939.  As
such, as other district courts have noted, "*Williams* stands for the proposition that
where product packaging contains an affirmative misrepresentation, the manufacturer
cannot rely on the small-print nutritional label to contradict and cure that
misrepresentation."  *Grimm v. APN*, Inc., No. SA CV 17-00356-JVS (JCGx), 2017 WL
6060624, at *4 (C.D. Cal. Nov. 20, 2017) (citing *Yumul v. Smart Balance, Inc.*, 733 F.
Supp. 2d 1117, 1129 (C.D. Cal. 2010)).

       That sort of "frontal" misrepresentation did not occur here.  Defendant did not
represent on the front panel of the packaging that its Product contains an ingredient
that it does not actually contain and then try to cure that falsity in the ingredient list on
the side panel.  Rather, Defendant prominently represents ***on the front panel*** that the
Product contains acetaminophen, which is ***confirmed*** by the ingredient list on the back
panel.  Through multiple messages across all panels of the packaging, Defendant
makes clear that the Product contains acetaminophen, which is an active ingredient and
real medicine that must be consumed in moderation.  Yet, Plaintiff contends that a
consumer is going to disregard all other representations and solely focus on the ***small
print*** on the ***side panel*** of the package.  Such a proposition is implausible.

       Moreover, nothing in *Williams* suggests that consumers are free to pick out one
single word within a panel of a package and ignore the rest of the messaging on that
same panel.  Here, the Non-Toxic Claim is on the same panel and is directly above the
bolded "***Drug Facts***" box that contains the dosage information.  Therefore, no
reasonable consumer would understand non-toxic to mean that the Product can be
consumed safely without regard to dose.  *Accord Cleveland v. Campbell Soup Co.*, No.
21-CV-06002-JD, 2022 WL 17835514, at *2 (N.D. Cal. Dec. 21, 2022) (dismissing
false advertising claims where the plaintiffs alleged that the label "0g Sugars"
suggested that a package of Goldfish were low in calories given the "0g Sugars" claim
appeared directly alongside a statement that there were "140 Calories per 55 pieces" of
Goldfish); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir.
2012) (affirming dismissal with prejudice of CLRA, FAL, and UCL claims and
rejecting the plaintiff's attempt to interpret words on a product's label out of context);
*Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) ("Any ambiguity that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

[plaintiff] would read into any particular statement is dispelled by the promotion as a whole"); *Rooney v. Cumberland Packing Corp*., No. 12-CV-0033-H DHB, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (holding that no reasonable consumer could be deceived into thinking the defendant's sugar was unprocessed based on the label "Sugar in the Raw" because the package stated in several places that the sugar was turbinado-sugar (a processed sugar)).

Again, the Court notes that it could imagine a situation where the term "non-toxic" might be misused.  But not so here.  Given the Ninth Circuit's affirmance of "the general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used," the Court declines to accept Plaintiff's interpretation of non-toxic as suggesting that Defendant's medicine is safe to consume without regard to dose because that is an implausible interpretation of the word in the context of this specific advertisement.  *See Moore*, 4 F.4th at 882.

Accordingly, the Motion is **GRANTED** to the extent it seeks dismissal of claims one, two, and four based on the Non-Toxic Claim.

At the hearing, Plaintiff's counsel argued that its state law claims are not derivative of the Lanham Act claims and therefore can independently survive scrutiny. Plaintiff contends that the advertisements violate California's Sherman Food, Drug, and Cosmetic Law, which deems a drug misbranded if its labeling is false or misleading.  (Opposition at 16) (citing Sherman Law, Art. 16, § 1111330, 110290). Plaintiff also cites a federal statute (21 U.S.C. § 321) that deems a drug misbranded if any product packaging is false.  (*Id*.).  However, because the Court concludes that Plaintiff has not stated a plausible claim of deception, the Court fails to see how the UCL or FAL claims, based on **any** statute prohibiting false advertising, survive.  To the extent counsel is suggesting that the Sherman Law and equivalent federal statute are not judged under a reasonable consumer test, Plaintiff fails to cite any authority for that proposition and the Court is unaware of any case that treats the state law claims differently when they are premised on the statutes cited by Plaintiff.  Therefore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

because the Court concludes that Plaintiff has not plausibly pled a theory of falsity, all of the claims based on false advertising inevitably fail.

The harder question is whether to grant leave to amend.  The Court is highly skeptical that any additional allegations will cure the deficiencies identified in Plaintiff's theory of falsity.  The Court's conclusion comes down to its reading of *Moore* and *Becerra* as compared to the packaging and theory of falsity in this action. The packaging here is what it is, and the Court's conclusion does not hinge on the need for additional facts.  In other words, the Court views the false advertising claims as flunking Rule 8's plausibility standard as a legal, rather than factual, matter. Nonetheless, to allow both parties to have their best foot forward, and out of an extreme abundance of caution, the Court will grant Plaintiff one (***and only one***) opportunity to amend.  *See Parsittie v. Schneider Logistics, Inc*., 859 F. App'x 106, 107 (9th Cir. 2021) (noting that district courts may not deny leave to amend on the grounds of futility without determining "that the pleading ***could not possibly*** be cured by the allegation of other facts")  (citing *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (emphasis in original)).

### B.    Motion to Strike

Defendant moves under California Code of Civil Procedure section 425.16(b)(1) (California's "anti-SLAPP" statute) to strike the following paragraphs (or portions thereof) from the FAC: 4, 38, 58, 62, and 73.  In short, Defendant seeks to strike the paragraphs concerning the Pharmacy Aisle Claim.  Both sides also seek attorney fees under the same statute.

The anti-SLAPP statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation."  *Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).  Motions brought under the anti-SLAPP statute are evaluated in two steps.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity."  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 819, 124 Cal. Rptr. 3d 256 (2011) (internal quotation marks and

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

citation omitted).  "If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim."  *Id.*  "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended by* 897 F.3d 1224 (9th Cir. 2019).  An anti-SLAPP motion may be used to strike allegations of protected activity without defeating an entire claim.  *Baral v. Schnitt*, 1 Cal. 5th 376, 393, 205 Cal. Rptr. 3d 475 (2016).

Plaintiff argues that Defendant's anti-SLAPP motion must fail because it seeks to strike commercial speech to which the anti-SLAPP statute does not apply.  *See* Cal. Code Civ. Proc. § 425.17(c).  Section 425.17(c) provides, in relevant part, that the anti-SLAPP provisions do "not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services" if both of the following conditions exist: (1) the statement consists of "representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining . . . sales;" and (2) "the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . .".  *See* Cal. Code Civ. Proc. § 425.17.  The plaintiff bears the burden of proof as to the applicability of the commercial speech exemption.  *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 26, 109 Cal. Rptr. 3d 329 (2010).

Defendant contends that the commercial speech exception is inapplicable because Defendant only seeks to strike the allegations that describe Ms. Biel's statement explaining her personal motivations for creating the Products.  Therefore, Defendant argues, her statements do not concern "representations of fact" as required by the commercial speech exception.  (Reply at 20).  Given the Court's conclusion that the Pharmacy Aisle Claim is puffery (i.e., not a representation of fact), and the only paragraphs Defendant seeks to strike concern the Pharmacy Aisle Claim, the Court agrees that the commercial speech exception does not appear to apply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

However, the Court disagrees that the Pharmacy Aisle Claim is a public issue within the meaning of the statute, and therefore, Defendant's motion to strike fails at the first step because the statement does not arise from protected activity.

The California Court of Appeal has identified "three categories of public issues: (1) statements concerning a person or entity in the public eye; (2) conduct that could directly affect a large number of people beyond the direct participants; (3) or a topic of widespread, public interest.  *Sarver v. Chartier*, 813 F.3d 891, 901–02 (9th Cir. 2016) (citing *Rivero v. American Federation of State, County, & Municipal Employees*, 105 Cal. App. 4th 913, 924 130 Cal. Rptr. 2d 81 (2003)).

Defendant appears to argue that the Pharmacy Aisle Claim is a matter of public interest primarily because it concerns a person in the public eye, Jessica Biel.  (Motion at 22).  But Ms. Biel clearly was not speaking as a famous actress or even a private citizen at the time she made the statement.  Ms. Biel was speaking as Defendant's corporate representative and the co-founder of the KinderFarms company.  To suggest that the Claim is automatically connected to a public issue just because Ms. Biel uttered the words, would tend to give all celebrity business owners the benefit of an anti-SLAPP motion based on their alleged statements concerning their products, while holding other corporations with non-celebrity founders to a different standard.  That cannot be the intent of the statute.  Indeed, to be considered a public issue the speech must **concern** the person in the public eye, not merely be stated *by* the person in the public eye.  Here, the paragraphs Defendant seeks to strike concern Ms. Biel's opinion about the available products in the pharmacy aisle, within which she sells her own Products.  The Pharmacy Aisle Claim cannot fairly be described as speech concerning Ms. Biel  — rather the Claim concerns Ms. Biel's company and products within the context of the pharmaceutical industry.

The Court agrees with Plaintiff that *Consumer Just. Ctr. v. Trimedica Int'l, Inc.*, 107 Cal. App. 4th 595,132 Cal. Rptr. 2d 191 (2003) is instructive here.  In *Trimedica*, the Court of Appeal affirmed the lower court's denial of the defendant's motion to strike in a consumer advocate fraud action against a manufacturer that claimed that its herbal supplement enlarged women's breasts because the defendant's speech about the supplement did not constitute a matter of public interest.  *Id.* at 602.  While the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**                    **Date:  April 14, 2023**
Title:  Genexa, Inc. v. Kinderfarms LLC

defendant argued that "herbal dietary supplements and other forms of complementary medicine are the subject of public interest," the court rejected that characterization of the speech involved and concluded that the issue was whether the defendant "misrepresented the specific properties and benefits" of the defendant's product.  *Id.* at 601.  The court noted that "matters of public significance" do not include "specific advertising statements about a particular commercial product, absent facts which truly make that product a matter of genuine public interest." *Id.* at 602.  Otherwise, the court reasoned, "nearly any product could claim its speech was about a topic of public interest," which "would allow every defendant in every false advertising case . . . to bring a special motion to strike under the anti-SLAPP statute, even though it is obvious that the case was not filed for the purpose of chilling participation in matters of public interest." *Id.*

Defendant tries to distinguish this action from *Trimedica* by arguing that the speech in *Trimedica* was about "specific properties and efficacy of a particular product" whereas the Pharmacy Aisle Claim is about "a personal story," namely, Ms. Biel's "experience and the status of the OTC medicine market for children."  (Reply at 19).  But as noted, Ms. Biel did not just gratuitously share a personal story about her experience with children's medicines in the context of an otherwise newsworthy story. Rather, the Pharmacy Aisle Claim was expressed in the context of Ms. Biel selling her Products and she clearly intended to convey that she believes her Products are "clean and effective."  (FAC ¶ 4).  By implication, Ms. Biel was necessarily describing the "properties" of her Products, like the speech at issue in *Trimedica*.  *See* 107 Cal. App. 4th at 601.

Moreover, even if the Claim concerned a personal story about Ms. Biel's experience searching for medicine in a pharmacy aisle, the Court fails to understand how that makes the speech any more a matter of public interest.  In support of its position, Defendant cites to *Tracy Anderson*, in which the district court concluded that statements by a "celebrity fitness trainer and influencer" that were "biographical" in nature, were statements that concerned a "person in the public eye," and therefore, the statements were made in connection with a matter of public interest for purposes of an anti-SLAPP motion.  *Tracy Anderson*, 2022 WL 17670418, at *9.  But given the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 22-9291-MWF (SKx)**               **Date:  April 14, 2023**

Title:  Genexa, Inc. v. Kinderfarms LLC

widespread prevalence of celebrities using their audiences to sell products, the Court is wary of an argument that just because a celebrity has personalized an advertisement, that advertisement is suddenly a matter of public interest within the meaning of the anti-SLAPP statute.  Therefore, the Court disagrees with the *Tracy Anderson* court's conclusion with respect to the anti-SLAPP analysis.  In this Court's view, the mere fact that Ms. Biel made the statement does not grant Defendant a per se privilege to invoke the anti-SLAPP statute.

Accordingly, the Motion is **DENIED** to the extent it seeks to strike paragraphs 4, 38, 58, 62, and 73 (all of which concern the Pharmacy Aisle Claim).

The Court also **DENIES** both parties' requests for a reward of attorney's fees.  While the anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs," here Defendant is not the prevailing party.  *See* Cal. Code Civ. Proc. § 425.16(c)(2).  Nonetheless, the Court does not view the motion to strike as entirely "frivolous" or "intended to cause unnecessary delay," as would be required to award Plaintiff attorney fees.  *See* Cal. Code Civ. Proc. § 425.16(c)(2) ("If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney[][] fees to a plaintiff prevailing on the motion.").

The primary argument for contending that the Motion is frivolous appears to be Plaintiff's position that the commercial speech exception applies.  But this Court concluded that the exception does not apply.  And the fact that there is analogous case law supporting Defendant's position further confirms that the Motion is not frivolous.  Therefore, neither party is entitled to attorney's fees.

At the hearing, neither party advanced any additional arguments as to the anti-SLAPP aspect of the Motion.

## IV.  <u>CONCLUSION</u>

The Motion is **GRANTED *with leave to amend*** to the extent it seeks dismissal of claims one, two, and four.  Plaintiff may file a Second Amended Complaint

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 22-9291-MWF (SKx)                **Date:** April 14, 2023

Title:  Genexa, Inc. v. Kinderfarms LLC

("SAC") by no later than **May 1, 2023**.  Failure to file a SAC by that date will be construed as a decision to stand on the FAC and proceed only with the remaining contractual interference claim.  Defendant shall respond to any SAC, or if no SAC is filed, answer the FAC as to the remaining claim, by no later than **May 15, 2023**.

The Court reiterates that there will be no Third Amended Complaint.  Plaintiff will have ***only one*** opportunity to amend the false advertising claims.

The Motion is **DENIED** to the extent it seeks to strike certain paragraphs under California's anti-SLAPP statute.  Both parties' requests for attorneys' fees are **DENIED**.

IT IS SO ORDERED.